UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | § | CHAPTER 7 |
| | § | |
| GLENN FAVRE | § | CASE NO 08-85264-MHM |
| DEBTOR | § | |
| | § | |
| GLENN FAVRE pro se | § | |
| CLAIMANT/PLAINTIFF | §THE HONORABLE MARGARET MURPHY | |
| | § | |
| v. | § | |
| | § | ADVERSARIAL PROCEEDING |
| ERIC MILLER | § | |
| DEFENDANT | § | 09-AP-09072 |

FILED
IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

M. REGINA THOMAS,
CLERK

DEPUTY CLERK

**PLAINTIFF'S GLENN R. FAVRE ANSWER TO COUNTER CLAIMS**

COMES NOW GLENN FAVRE and files answer to Defendant Eric Miller's

Counter Claims, shows this Honorable Court:

**ANSWER TO COUNTERCLAIM**

1,

ADMIT

2.

DENIED

The complaint was filed by the Plaintiff as a personal claim against the Defendant

and his counsel for abusing the judicial system and utilizing civil contract torte to commit

grand larceny and Violating the Fraud Enforcement Recovery Act (her in refered to as

FERA) as amended by S. 386 on May 20, 2009 by President Obama.and the Fair Debt

1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

Collection Act (here in referred to as FCA)

3.

Denied.

The business debt that the defendant is claiming to have been that of the company Top to Bottom Renovations, LLC was discharged as personal debt of the Debtor because it was personally in his name and not that of Top to Bottom Renovations, LLC by the Honorable Court in the Discharge Order of April 9, 2009 under section 727, that this court has discharged under section 727 of the Chapter 7 and allowed the Plaintiff to retain the liens on the Defendants property.

4.

Admit

5.

Denied.

6.

Denied

The damages that the Plaintiff is seeking are not the same debt that is being sought in State Court of Fulton County, Civil Action Number 09vs160028 –B. The damages that are being sought are for the willful negligent violation with the intent to

2

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

harm the Plaintiff on a personal level. Along with the damages that were sustained from the Defendants action, knowing that the sole source of income was that of the Plaintiffs Company Top to Bottom Renovations, LLC being a Limited Liability Company in the State of Georgia with the elections as an S-Corporation for single taxation. The Defendants litigious action of violating Contract Disputes Act (CDA) lead to the Debtors filing of a voluntary Chapter 7 protection from this Honorable Court.

7.

Denied

8.

Denied

WHEREFORE, Plaintiff Glenn R. Favre requests this Honorable Court award the Plaintiff the amount requested in the complaint and request that this Honorable Court enter an award for Default Judgment for failing to properly respond to the Order of Summons issued on October 16, 2009.

For the willful intent to harm, willful violations to deceive this Honorable Court, knowingly presenting and making false and fraudulent claims, in an attempt to receive the approval of the State Court of Fulton County to rule in the favor of the Defendant is in direct violation of the "Fraud Enforcement Recover Act" (FERA) and the Civil False Claims Act as amended by S 386., on May 20, 2009 by President Obama and knowingly presented false record and made false statements, material to the Plaintiff's claim that the

3

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

Defendant willfully violated this courts order in an attempt to resolve the fraudulent claims made by the Defendants; conspired collectively to commit the violations, as described in section 3729 subparagraph (A), (B), (D), (E), (F), and (G)[1] and knowingly

---

[1] The new sections 3729(a)(1)(A), (B), (C), and (G) extend liability to any person who:
(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
[ . . . ] or
(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay
**Major FCA Amendments Expanding Liability** Under the FERA, the key liability sections of the FCA remain the provisions addressing false claims, false statements supporting false claims, conspiracy, and the reverse false claims and obligation provisions. These provisions have been renumbered as well as expanded to cover additional conduct. **The new sections 3729(a)(1)(A), (B), (C), and (G) extend liability to any person who:(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G); [ . . . ] or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.**

Many of the key changes are in the definitions, found in section 3729(b). **Elimination of Allison Engine's Intent Requirement:** Under the Supreme Court's unanimous decision in Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123 (2008), FCA liability was limited to fraudulent statements that were designed "to get" false claims paid or approved "by the Government." See FraudMail Alert No. 08-06-09. See also John. T. Boese, Civil False Claims and Qui Tam Actions §2.06[G] (3d ed. 2006 & Supp. 2009-1). The Supreme Court's interpretation in Allison Engine no longer applies after the FERA because the new conspiracy section was drafted to cover only a conspiracy "to get a false claim paid or approved." Courts had properly interpreted this language to limit the conspiracy section to apply only to violations of then-subsection 3729(a)(1), and not to violations of the reverse false claim provision. Moreover, the conspiracy section required that the government pay the false claim. The new conspiracy section, **31 U.S.C. § 3729(a)(1)(C), expands the conspiracy section to include a conspiracy to commit a violation of any other substantive section of the FCA.** The amendment also eliminates the need for the false claim to be paid or approved, and assesses liability for conspiring to commit the violation. Importantly, the word "knowingly" still does not appear in the language of the new conspiracy section, so the argument remains that a common law liability, including specific intent, is still required to prove a conspiracy under the FCA.

**Liability for Overpayments:** The amended reverse false claims liability provision in section law removes both the "to get" language and the "by the Government" limitation in section 3729(a)(2)—as well as comparable language in sections 3729(a)(3) and (a)(7). Further, it attempts to make those changes in section 3729(a)(1)(B) effective as of June 7, 2009—the date Allison Engine was decided, The Court in Allison Engine found that, without a clear link between a false claim and payment or approval by the government, the FCA would be "boundless" and become an "all-purpose antifraud statute." 128 S. Ct. at 2128, 2130. To replace this rational limitation, the FERA adds a new definition of "claim," and FCA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

liability will be limited only by requiring some sort of nexus to the government. The FCA now covers requests for funds to a contractor, grantee, or other recipient, if the money or property requested "is to be spent or used on the Government's behalf or to advance a Government program or interest." The legislation does not define the key terms "used on the Government's behalf" or "to advance a Government program or interest," and presumably courts will have to decide their meaning on a case by case basis. No one knows the scope. Are government funds invested in GM or AIG "advanc[ing] a Government program" so that a false claim to those entities will violate the FCA and be enforced by qui tam relators?[1] Recognizing that this new language is not very clear, Senator Kyle attempted to limit its scope: [p]revious understanding, as well as commons sense, dictate that a particular transaction does not "advance a Government program or interest" unless it is predominantly federal in character—something that at least would require . . . that the claim ultimately results in a loss to the government . . . [rather than] any garden-variety dispute between a general contractor and a subcontractor simply because the general receives some federal money. 155 Cong. Rec. S4540 (daily ed. Apr. 22, 2009) (statement of Sen. Kyl). One hopes that Senator Kyle's interpretation is accepted. Future FCA case law will determine whether and to what extent Congress succeeded in overturning Allison Engine through the FERA.

**Materiality Requirement:** *In addition to the nexus to the government requirement,* the FERA, at long last, specifically incorporates a materiality requirement in the False Claims Act (a position the government and relators fought, without success, for over 15 years), but it defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," which is the "weaker" materiality standard that has been applied in some FCA cases. See John T. Boese, Civil False Claims and Qui Tam Actions §2.04 (Aspen Publishers) (3d ed. & Supp. 2009-2). How much of a difference will this make? That depends entirely on how literally courts will read this provision. Almost every violation or mistake is arguably "capable of influencing" a payment decision by the government, but many courts in the past have read this test as strongly limiting the application of the FCA. For example, despite applying this "weaker" materiality standard, at least two courts have held that violations of "conditions of participation" in a Federal healthcare program do not result in FCA violations. See United States ex rel. Conner v. Salina Reg'l Health Ctr., 543 F.3d 1211 (10th Cir. 2008); United States ex rel. Landers v. Baptist Mem'l Health Care Corp. 525 F. Supp. 2d 972 (W.D. Tenn. 2007). **Conspiracy:** Under the prior FCA, the 3729(a)(1)(G) quoted above extends new liability to "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." **Under this provision, there is no need for a person to have taken an affirmative act—a false statement or record—in order to conceal, avoid, or decrease the obligation to the government.** This new provision is even more dangerous because an "obligation" is specifically defined to include within the scope of FCA liability the retention of an overpayment from the government. The term "improperly" is intended to limit this liability, and would presumably exclude overpayments such as those under Medicaid that undergo a reconciliation process. Practitioners will be required, *almost immediately after passage, to begin to advise clients whether they have received "overpayments"* and the potential liability that could result from retention of such overpayments. Moreover, even though this provision is not retroactive, an overpayment is an overpayment, whether it occurred before or after May 20, 2009. The government and relators are almost certain to argue that this provision applies to overpayments made before the date of the legislation. **Expanded Definition of "Obligation": The definition of "obligation" that triggers reverse false claims liability is expanded to encompass "an established duty, whether or not fixed" that arises from a contractual, grantee, licensee, or fee-based relationship, from a statute or regulation, or from the retention of any overpayment. According to government statements, this is intended to overturn, among other cases, the Sixth Circuit's decision 10 years ago in United States ex rel. American Textile Manufacturers Institute, Inc. v. The Limited, Inc., 190 F.3d 729 (6th Cir. 1999) ("ATMI"), which defined "obligation" to include only established obligations to pay money to the government. In addition to extending new liability to the retention of overpayments, this expanded definition seeks to extend liability to duties to pay fees that were not covered previously because they were not fixed in all particulars. Whether much of an expansion is actually achieved under this provision remains to be seen because even the DOJ concedes that the new language is not intended to extend FCA liability to**

5

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

made, used, and causes to be made and used, a false record and statements material to an obligation to pay or transmit money or property to the Government, and knowingly conceals and knowingly and improperly avoids in an attempt to decreases an obligation to pay or transmit money or property to the Government.

The payment of Contract Disputes Act (CDA) claims is governed by 41 U.S.C. 612, Subsections 612(a) and 612(b). To prove the Willful Violations with the intent to harm under FERA AND FCA and further asks that this Court award the Plaintiff all of his costs and any further relief which this Court deems just and proper.

The Plaintiff also request that this Honorable Court seizes the Defendants property and donated it to The Ronald McDonald Charity Foundation to be used as a Ronald McDonald Children's House in the name of GRF Planes Foundation.

The Plaintiff further request that this Honorable Court Sanction the Defendant Attorney Kim Dymecki ESQ., for violations of section 727 and that of the affects of 11

---

penalties or fines. (The reader should note that the author represented many of the defendants in the ATMI case.)Effective Date: Under the effective date provision in the FERA, the FCA liability amendments would apply prospectively, with one important exception. The amendment to section 3729(a)(2)takes effect on the date that Allison Engine was decided—June 7, 2008—making that amendment retroactive. The retroactivity of this amendment will raise a host of practical problems in pending cases, and is almost certain to be challenged as unconstitutional because conduct which the Supreme Court defined as outside the scope of FCA liability is, retroactively, now a violation. Were this a normal civil statute, such retroactivity would be allowable. But the Supreme Court has already defined the FCA as an "essentially punitive" statute. Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765 (2000). Whether a clearly punitive statute can be applied retroactively is a completely different question. Additional FCA Amendments, In addition to amending the FCA's liability provisions, the FERA includes four other amendments that make recoveries and investigations under the FCA easier. These amendments are as follows: Retaliation: The prohibition against retaliation is expanded to include a "contractor, or agent," in addition to an employee—without requiring prohibited retaliatory acts to be taken by an "employer." Under this unusually broad definition, a retaliation action could be based on many different types of relationships that do not involve an employment contract, which could lead to\ unintended consequences.

6

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

USC § 524, for the violations of The new sections 3729(a)(1)(A), (B), (C), and (G) and find her in accordance with Tier 3 for the FERA and the FCA at $1,000,000.00 per day that Kim Dymecki, ESQ., has allowed these violation to continue and award to the Plaintiff the funds received from this Judicial Ruling be paid through "The Fund" held by the United States Treasury in accordance with The payment of Contract Disputes Act (CDA) claims is governed by 41 U.S.C. 612., Subsections 612(a) and 612(b).

_____    _____
Respectively Submitted              Glenn Favre pro se
                                    110 South Columbia Drive #11
                                    Decatur, Georgia 30030
                                    404-373-1137

7

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I Glenn R. Favre, am over the age of 18 years old at the time of this service, that a true and correct copy of the foregoing has been furnished by

U.S. Mail with the correct postage and faxed to:

KIM DYMECKI
152 NASSAU STREET
ATLANTA, GEORGIA 30030
4042309155

_____
GLENN FAVRE